UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELLEN EVANS-SWENY,

    Plaintiff,

v.                                  Case No: 2:18-cv-56-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff, Ellen Evans-Sweny, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability insurance benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

#### A. Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff applied for disability insurance (DIB) benefits on December 1, 2009, alleging disability since November 1, 2007. (Tr. 165-170). Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested a hearing and on June 2, 2011, an administrative hearing was held before Administrative Law Judge (ALJ) Kevin Dugan. (Tr. 31-74). ALJ Dugan denied Plaintiff's claim on August 5, 2011. (*See* Tr. 7-30). Plaintiff requested Appeals Council review, which was denied on December 1, 2011. (Tr. 16). Plaintiff thereafter filed a claim in Federal Court, and on February 4, 2013, the District Court for the Middle District of Florida, Fort Myers Division issued a decision remanding her claim to the ALJ for further consideration of her hand impairments. (Tr. 1217-33). The Appeals Council issued a remand order on April 18, 2013, (Tr. 1244-46), and the remand hearing was held on October 28, 2013 before ALJ Larry Butler. (Tr. 1045-1109). ALJ Butler again denied Plaintiff's claim on March 26, 2015. (*See* Tr. 1251-58).

Plaintiff requested Appeals Council review, which was granted on November 4, 2015, because the ALJ did not address two treating source opinions. (Tr. 1267-71). The second remand hearing was held on January 23, 2017 before ALJ Maria Northington (henceforth, "the ALJ"). (Tr. 1110-1186). The ALJ denied Plaintiff's claim on September 27, 2017. (Tr. 1012-41). Plaintiff filed initiated the instant action by Complaint (Doc. 1) on January 24, 2018.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of November 1, 2007, through her date last insured of December 31, 2012. (Tr. 1018). At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease diagnosed in October 2007 with mild spondylosis and mild scoliosis. (Tr. 1018). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 1019).

Before proceeding to step four, the ALJ found that Plaintiff, through the date last insured, had the residual functional capacity ("RFC") to perform

> light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the regulations, as well as, lift/carry 10 pounds frequently. This includes sedentary work as defined in the regulations. The claimant had no limits for sitting in an eight-hour workday. She was capable of standing and/or walking for up to six hours in an eight-hour workday. She was able to perform occasional postural functions of climbing ramps/stairs and stooping. She was to perform no crawling, no kneeling, no crouching and no climbing of ladders/ropes/scaffolds. The claimant was to perform no overhead lifting, no overhead carrying and no overhead reaching with the bilateral upper extremities. In the course of work, the claimant was to have no exposure to extremes of heat, humidity or cold temperatures. The claimant was to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. No work with vibratory tools and equipment. The claimant was to perform no constant fine bilateral manipulations, however, frequent, occasional and gross manipulations remained intact or unaffected. The claimant retained the capacity to understand, remember and carry-out greater than simple but less than highly complex tasks and instructions. She was able to make judgments regarding work related decisions, complete tasks in a timely manner and manage routine job stressors. She was able to maintain a routine work schedule and handle changes in non-highly complex job environments. She was able to control her emotions. She was able to respond appropriately to the public, supervisors, coworkers and work situations. She was able to complete detailed instructions consistent with these relate mental functions.

(Tr. 1020). At step four, relying on the testimony of a vocational expert, the ALJ found that through the date last insured, Plaintiff was capable of performing past relevant work as a General Clerk and Sales (general hardware) as this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 1029).

Despite finding Plaintiff could perform her past relevant work, the ALJ proceeded to step five and made the alternative finding that considering Plaintiff's age, education, work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 1031). Again relying on the vocational expert's testimony, the ALJ found that Plaintiff could perform such occupations as electronic worker, injection molding tender, and small product assembler. (Tr. 1031). The ALJ concluded that Plaintiff had not been under a disability from November 1, 2007, the alleged onset date, through December 31, 2012, the date last insured. (Tr. 1032).

**II.     Analysis**

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by finding Plaintiff's mental impairments non-severe; (2) whether the ALJ erred by relying on vocational expert testimony that is inconsistent with the DOT; and (3) whether the ALJ erred by failing to consider Plaintiff's stellar work history in her credibility assessment. The Court will address each issue in turn.

**a. Whether the ALJ erred by finding Plaintiff's mental impairments non-severe.**

Plaintiff argues that the ALJ erred by failing to find that Plaintiff had severe mental impairments. (Doc. 21 p. 11-15). Plaintiff argues that the opinions of Christopher Seavey, LMHC, Ph.D. and Paula Bowman, Psy.D. unambiguously establish that Plaintiff's mental impairments are severe. (Doc. 21 p. 13-14). In addition, Plaintiff contends that the ALJ failure at step two to

identify severe mental impairments caused the ALJ's RFC finding to not be supported by substantial evidence. (Doc. 21 p. 14-15).

In response, Defendant argues that the ALJ failed to meet her burden of proving that she had a severe mental impairment. (Doc. 21 p. 16). Defendant contends that the evidence from Dr. Seavey and Dr. Bowman do not establish that Plaintiff had a severe mental impairment and that substantial evidence supports the ALJ's finding that any mental impairment was not severe. (Doc. 21 p. 17-19).

The Court begins with a review of the medical opinions of Dr. Seavey and Dr. Bowman. The record shows that from May 2009, Plaintiff received weekly telephonic therapy sessions with Dr. Seavey. (Tr. 544-548; 920-928; 1540-1592; 1614). Plaintiff complained of anxiety, frustration with various life stressors including her relationships with her spouse and parents, anger, depressed mood, tearfulness, and memory deficits. (Tr. 544-547; 921-922; 925; 1580-1582; 1587; 1592). On January 6, 2010, Dr. Seavey completed a mental status report wherein he indicated that Plaintiff displayed no apparent disturbances in thought process or content but had exhibited some recent memory deficits. (Tr. 749). He advised that her dysthymic symptoms and episodes of depression may be exacerbated by chronic pain and opined that any work should be "flexible to accommodate 'bad days'" and allow her to change positions frequently. (Tr. 749-50). He opined that she was probably not capable of sustaining work activity due to pain and depression episodes. (Tr. 750).

On April 13, 2011, Dr. Seavey completed a mental RFC questionnaire wherein he concluded that Plaintiff was "markedly limited" in her ability to respond appropriately to changes in the work setting and would likely deteriorate if she were placed under stress, particularly job-related. (Tr. 935-938). Dr. Seavey concluded that Plaintiff's impairment had lasted, or could be

expected to last, 12 months or more. (Tr. 938). He further opined that she was "moderately limited" in the following work-related areas of functioning:

- Accept instructions from or respond appropriately to criticism from supervisors or superiors
- Work in coordination with or proximity to others without distracting them or exhibiting behavioral extremes
- Perform and complete work tasks in a normal workday or week at a consistent pace
- Work in cooperation with or proximity to others without being distracted by them.

Dr. Seavey also concluded that Plaintiff had mild limitations in her ability to maintain attention and concentration for more than brief periods of time and mild limitations in her ability to perform at productive levels expected by most employers. (Tr. 935-37).

On September 24, 2012, Dr. Bowman, performed a psychological consultative examination of Plaintiff following her complaints of sadness, crying spells, lack of motivation, and sleep disturbances. (Tr. 1478-83). She did not socialize and sometimes forgot conversations or events that had occurred. *Id.* She indicated that she was having difficulty coping with economic instability, chronic pain, and physical limitations. *Id.* During the exam, Plaintiff was cooperative and sociable. She showed appropriate dress and hygiene. Her gait and motor behavior were normal. Her speech and language were unremarkable. Her thought processes were intact. Her attention, concentration, and memory were normal. Her intellectual functioning was estimated to be in the average range. Her insight and judgment were good. (Tr. 1479-1480). A mental status examination was significant for mildly depressed mood and affect. (Tr. 1480). Plaintiff's recent and remote memory skills were adequate. (Tr. 1480).

Plaintiff reported that on almost a daily basis she can shower, bathe, dress and groom herself, sometimes with her husband's assistance. She stated she engaged in only minimal cleaning, laundry, and shopping due to difficulty standing and hand pain. She prepares simple meals and her husband helps her with performing these chores. She was able to manage money.

She had a valid driver's license. She had telephone contact with her son twice weekly and kept in touch with family members. She interacted with neighbors frequently. She spent time watching television, listened to the radio, and reading (Tr. 1480). Dr. Bowman diagnosed Plaintiff with mood disorder secondary to chronic pain and anxiety disorder and assigned a Global Assessment of Functioning (GAF) rating of 67. (Tr. 1481).

Dr. Bowman opined that Plaintiff could follow and understand simple directions and instructions and perform simple tasks independently, but sometimes needed assistance. (Tr. 1481). She could maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks with supervision, and relate adequately with others, but could not appropriately cope with stress due to her symptoms of depression and anxiety. *Id.* Dr. Bowman determined that the results of the examination appeared to be consistent with psychiatric problems which "may significantly interfere with" Plaintiff's ability to function on a daily basis. *Id.* Dr. Bowman concluded Plaintiff's prognosis was good with appropriate intervention. (Tr. 1482).

On October 19, 2016, Dr. Seavey drafted a letter providing that Plaintiff's chronic pain and level of anxiety represented barriers to gainful employment, noting that she had become increasingly depressed as her health had deteriorated and she had become less socially and physically active. (Tr. 1614). He opined that it was unlikely she could sustain gainful employment. *Id.*

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. §§

404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F.App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987))

In this case, while the ALJ did not find any of Plaintiff's mental impairments "severe," she did find that Plaintiff had the severe impairments of lumbar degenerative disc disease with mild spondylosis and mild scoliosis. Thus, the ALJ satisfied the requirement of step two and she proceeded in the sequential evaluation process. Despite finding that Plaintiff's mental impairments were not severe, the ALJ considered the medical and opinion evidence pertaining to Plaintiff's mental impairment in formulating the RFC. The ALJ specifically addressed the opinions of Dr. Bowman and Dr. Seavey, explaining in detail her reasoning in according little weight to these opinions. (Tr. 1028). Notably, Plaintiff does not challenge the ALJ's weighing of these opinions on review. For these reasons, the Court finds no reversible error at step two.

### b. Whether the ALJ erred by relying on vocational expert testimony that is inconsistent with the DOT.

Plaintiff contends that the vocational expert's testimony conflicted with the DOT and that the ALJ erred by relying upon the testimony. Plaintiff notes that the jobs identified by the vocational expert require frequent reaching, which is defined by the DOT as "extending hand(s) and arm(s) in any direction." (Doc. 21 p. 21). Thus, Plaintiff contends, the vocational expert's testimony that a person limited to no overhead reaching could perform these jobs is inconsistent with the DOT. (Doc. 21 p. 21). Plaintiff argues that because the ALJ failed to obtain a reasonable explanation from the vocational expert regarding this apparent conflict between the DOT, the ALJ's step four and step five findings are not supported by substantial evidence. (Doc. 21 p. 21). In response, Defendant argues that the ALJ properly relied on the vocational expert's testimony to find that a significant number of jobs existed in the national economy that Plaintiff could perform. (Doc. 21 p. 21).

In the past, the Eleventh Circuit held that an ALJ complies with SSR 00-4p when (1) the ALJ asks the VE if there were any inconsistencies between his or her testimony and the DOT and (2) the VE testifies there were no inconsistencies. *See Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012); *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 938-39 (11th Cir. 2011).

However, in the recent published opinion *Lindell Washington v. Commissioner of Social Security*, the Eleventh Circuit held that "SSR 00-4p is properly understood to impose an affirmative duty on the ALJs to identify apparent conflicts, ask the VE about them, and explain how the conflict was resolved in the ALJ's final decision." No. 17-13649, 2018 WL 5318147, at *10 (11th Cir. Oct. 29, 2018). Merely asking the VE if there is a conflict between his or her testimony and the DOT does not fulfill the ALJ's affirmative obligation to undertake a meaningful

effort to uncover apparent conflicts. *Id.* at *8.  A conflict is "apparent" if it should be apparent to an ALJ who has ready access to and a close familiarity with the DOT. *Id.* at 10.

At the administrative hearing, the ALJ asked the vocational expert whether he attests that his testimony would be consistent with the DOT unless he said otherwise. (Tr. 1178).  The vocational expert responded, "I do". (Tr. 1178).  Plaintiff's counsel did not bring any apparent conflict to the attention of the vocational expert.  While such facts may have formerly satisfied the requirements of SSR 00-4p as interpreted by Eleventh Circuit case law, they do not under *Washington*.

Here, there appears to be an apparent conflict between the VE's testimony and the DOT. At the last administrative hearing, the ALJ posed a hypothetical question that limited Plaintiff to "no overhead lifting, no overhead carrying, and no overhead reaching with the bilateral upper extremities." (Tr. 1180).  In response, the vocational expert testified that such an individual could perform Plaintiff's past relevant work as a general clerk, DOT Code 209.562-010, and general hardware salesperson, DOT Code 279.357-050, as well as jobs as an electronics worker, DOT Code 726.687-010; production assembler, DOT Code 706.687-010; and injection molding tender, DOT Code 556.685-038.6. (Tr. 1182, 1184).  As Plaintiff notes, each of the jobs identified by the VE require frequent reaching, which is defined by the DOT Selected Characteristics as "extending hand(s) and arm(s) **in any direction**." DOT Selected Characteristics, Appendix C-3.  "In any direction" encompasses reaching overhead.

The Court rejects Defendant's argument that there is no conflict because the jobs identified by the VE "reasonably might require no overhead reaching such that Plaintiff's RFC precludes performance." (Doc. 21 p. 22).  Yet, it seems to the undersigned, just as likely that such jobs reasonably might require overhead reaching.  This uncertainty underscores the necessity required

by *Washington* for the ALJ to affirmatively seek out conflicts and address them. Accordingly, the Court determines that this case should be remanded for the ALJ to resolve any apparent conflict between the VE's testimony and the requirements of the DOT concerning Plaintiff's ability to reach overhead.

### c. Whether the ALJ erred by failing to consider Plaintiff's stellar work history in her credibility assessment.

Plaintiff argues that the ALJ erred while considering Plaintiff's credibility by failing to acknowledge that Plaintiff had nearly 28 years of consecutive earnings. (Doc. 21 p. 23-25). Plaintiff contends that an exemplary work history is a credibility enhancing factor under agency policy set forth in 20 C.F.R. § 404.1529(c)(3) and SSRs 96-8p and 96-7p and fundamental fairness requires consideration of this factor. (Doc. 21 p. 25). In response, Defendant argues that the ALJ properly considered Plaintiff's subjective statements, together with other evidence, in assessing Plaintiff's RFC. (Doc. 21 p. 25-28).

In this case, the Court does not find it appropriate to remand on the basis that the ALJ failed to discuss Plaintiff's work history while considering Plaintiff's credibility. In her decision, the ALJ thoroughly discussed the medical record and opinions and explained at length her reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms not entirely consistent with the medical evidence. (Tr. 1020-29). While Plaintiff is correct that an excellent work history may enhance a claimant's credibility, it does not necessitate remand in this case where the ALJ based her credibility finding on a careful analysis of the medical record and Plaintiff has failed to show the credibility finding was otherwise erroneous.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 27, 2019.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties